IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RASHAUN CARLISLE (M35981), | ) |
| Petitioner, | ) Case No. 20 C 2915 |
| v. | ) Judge Sharon Johnson Coleman |
| ANTHONY WILLS,[1] Warden, Menard Correctional Center, | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is pro se petitioner Rashaun Carlisle's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254(d)(1). For the following reasons, the Court denies Carlisle's petition and declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

**Background**

When considering habeas petitions, federal courts presume that the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Lentz v. Kennedy*, 967 F.3d 675, 678 (7th Cir. 2020). Where Carlisle has not provided clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's decisions on direct and post-conviction appeal.

A jury found Carlisle guilty of five counts of attempted first degree murder, one count of aggravated battery with a firearm, and one count of aggravated discharge of a firearm after he used a sawed-off shotgun to shoot at police officers in Stone Park, Illinois, a near west suburb of Chicago.

---

[1] Because Anthony Wills is the Warden of Menard Correction Center where Carlisle is incarcerated, the Court substitutes Wills as Respondent under Federal Rule of Civil Procedure 25(d).

At sentencing, the trial judge in the Circuit Court of Cook County merged the counts of aggravated battery with the firearm and aggravated discharge of a firearm counts into the counts of attempted first degree murder. The judge then sentenced Carlisle to 60 years for the two counts of attempted first degree murder.

Prior to his jury trial, Carlisle sought to introduce the expert testimony of Donald Mastrianni, the owner of Illinois Gun Works and certified instructor of firearm and gun safety classes. Based on Mastrianni's visual inspection, his firing of a sawed-off shotgun, and the measurements of the crime scene, Mastrianni was prepared to opine that the sawed-off shotgun was not deadly at the distance from which it was fired. The State sought to bar the expert testimony as irrelevant because a shotgun is per se a deadly weapon under Illinois law. The Circuit Court judge agreed and denied Carlisle's request to present Mastrianni's expert testimony.

At trial, Stone Park police officer Andrew Morales testified that at 2 a.m. on May 8, 2010, he was on patrol when he responded to a call to close a bar located in a strip mall on Mannheim Road in response to complaints of gang activity. Thereafter, several police officers arrived at the scene, including Morales, Robert Vicari, and Terry Carr. After the bar closed, Morales went to a liquor store next door to talk to the owner, at which time a witness reported another incident outside of the bar. Morales testified that a few minutes later, he heard gunshots, ran outside, and saw Carlisle pointing a shotgun at Vicari and Carr.

Vicari also testified at trial stating that when they investigated the incident in front of the bar, he heard a gunshot and then saw a gunman fire another shot from about 60 feet away that hit him. Once Vicari realized that he had been shot, he called on his radio that there was an officer shot and that a Hispanic male suspect with a black hoodie, blue jeans, and a sawed-off shotgun was heading eastbound from Mannheim Road. Similarly, Carr testified at trial that he heard gunfire and pursued

the gunman. Carr stopped his pursuit after Vicari radioed that he had been shot. Another police officer apprehended Carlisle. Later, Carlisle made a statement to an Assistant State's Attorney that he saw people outside of the bar flashing Latin King gang signs and that he wanted to hurt the Latin Kings because they beat him up for no reason. He stated that he fired his shotgun at them.

On direct appeal, Carlisle argued that the trial court abused its discretion and violated his right to present a defense when it barred Mastrianni's expert testimony. He further argued that his trial counsel was constitutionally ineffective due to counsel's failure to use the investigative officer's report to impeach the testimony of Carr and Vicari. The Illinois Appellate Court rejected Carlisle's appellate arguments on June 30, 2015. Carlisle brought these exact two claims in his petition for leave to appeal ("PLA") to the Illinois Supreme Court. On May 25, 2016, the Illinois Supreme Court denied Carlisle's PLA.

Also in May 2016, Carlisle filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, arguing that: (1) trial counsel was ineffective for failing to object to the publication of the photographs of police officer Vicari's bloody vest and radio to the jury during deliberations; and (2) appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in this regard. The trial court dismissed Carlisle's post-conviction petition as frivolous and patently without merit. On post-conviction appeal, Carlisle raised the ineffective assistance of appellate counsel claim. The Illinois Appellate Court affirmed in September 2019. On January 29, 2020, the Illinois Supreme Court denied Carlisle's PLA.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act, the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495,

146 L.Ed.2d 389 (2000); *Brown v. Jones*, 978 F.3d 1029, 1033 (7th Cir. 2020). Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Williams,* 529 U.S. at 407. For a decision to be objectively unreasonable under this standard, it must lie well outside permissible differences of opinion. *Maier v. Smith*, 912 F.3d 1064, 1074 (7th Cir. 2019). The AEDPA standard is a high one because federal courts give substantial deference to state court decisions. *Fieldman v. Brannon*, 969 F.3d 792, 799 (7th Cir. 2020).

**Discussion**

*Procedurally Defaulted Claims*

In May 2020, Carlisle filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254(d)(1). Construing his pro se petition liberally, *see Lund v. United States,* 913 F.3d 665, 669 (7th Cir. 2019), Carlisle brought the following claims that are procedurally defaulted: (1) he was denied due process when the State failed to correct a witness' perjured statement; (2) the State violated the advocate-witness rule when it called an Assistant State's Attorney to testify; (3) he was denied due process and a fair trial because the jury instructions were confusing; and (4) he was denied due process and a fair trial because the Circuit Court did not instruct the jury on any lesser-included offenses. Similarly, Carlisle has procedurally defaulted some of his ineffective assistance of counsel claims, including counsel's failure to introduce "other tangible evidence," object to the Assistant State's Attorney's testimony, object to the publication of the photographs of the victim's vest and radio, object to evidence of his tattoos, and object to opening and closing statements.

Carlisle procedurally defaulted these claims because he failed to present them through one complete round of state court review before filing his habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999); *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir.

4

2018). There are limited exceptions to procedural default, including cause and prejudice or the miscarriage of justice exception. *Schmidt v. Foster*, 911 F.3d 469, 487 (7th Cir. 2018) (en banc). Here, Carlisle argues that counsel was constitutionally ineffective. Indeed, "[m]eritorious claims of ineffective assistance can excuse a procedural default," but as discussed below, Carlisle's Sixth Amendment ineffective assistance of counsel claims are without merit or were not properly preserved through a complete round of state court review. *Richardson v. Lemke,* 745 F.3d 258, 272 (7th Cir. 2014). Because these claims are procedurally defaulted, the Court does not reach their merits. *Hicks v. Hepp*, 871 F.3d 513, 531 (7th Cir. 2017).

*Remaining Habeas Claims*

Carlisle asserts that the Circuit Court violated his right to compulsory process when it barred him from calling Mastrianni as an expert witness. "The Sixth Amendment guarantees the accuse the right 'to have compulsory process for obtaining witnesses in his favor.'" *Makiel v. Butler,* 782 F.3d 882, 907 (7th Cir. 2015) (citation omitted); *see also Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The right to compulsory process, however, is not unlimited, for example, the "Compulsory Process Clause…does not require criminal courts to admit evidence that is irrelevant." *Makiel*, 782 F.3d at 907.

The Illinois Appellate Court reasoned that the expert testimony concerning the sawed-off shotgun was not relevant to proving the first element of attempted murder, namely, a substantial step toward killing an individual, because shotguns are per se deadly weapons under Illinois law. *See People v. Carlisle*, 35 N.E.3d 649, 665, 393 Ill. Dec. 877, 2015 IL App (1st) 131144, ¶ 67 (1st Dist. 2015). Next, the appellate court concluded that Mastrianni's testimony was not relevant to the second element of attempted murder – whether Carlisle intended to commit murder – because Mastrianni could not testify as to what Carlisle knew about the shotgun's capabilities. In short,

5

because the expert witness testimony was not relevant to Carlisle's attempted murder charges, his right to compulsory process was not violated.

As such, the Illinois Appellate Court's decision does not lie well outside permissible differences of opinion, which Carlisle must establish to succeed on this habeas claim. *See Maier*, 912 F.3d at 1074. Instead, the appellate court reasonably concluded that the trial court did not abuse its discretion when it found the expert testimony was not relevant to the charges against Carlisle. Thus, Carlisle's compulsory process claim is without merit.

Next, the Court turns to Carlisle's ineffective assistance of counsel claims that he has not procedurally defaulted. To establish ineffective assistance of trial counsel in violation of the Sixth Amendment, Carlisle must show: (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms;" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When analyzing the *Strickland* performance prong, courts presume counsel's conduct is within the "wide range of reasonable professional assistance." *Winfield v. Dorethy*, 956 F.3d 442, 451 (7th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). Under the *Strickland* prejudice prong, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," rather, Carlisle must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693, 695. If Carlisle fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *Id.* at 697.

Carlisle argues that his trial counsel was constitutionally ineffective because he failed to lay a proper foundation to impeach Officers Vicari and Carr with their prior inconsistent statements made to the investigative detective. The Illinois Appellate Court applied *Strickland* to this argument

concluding that Carlisle could not prove he was prejudiced by counsel's failure to impeach Vicari and Carr based on the overwhelming evidence of Carlisle's guilt presented at trial, including Carlisle's admission that he was the shooter. The appellate court then summarized the trial evidence underlying the jury's guilty verdicts, specifically noting that if counsel had impeached Officer Vicari to show that there was a large crowd in front of the bar, there was no reasonable probability that any such evidence would change the outcome of the jury trial. As to Officer Carr's inconsistent testimony of what lane of the street Carlisle was standing in when he shot at the officers, the Illinois Appellate Court similarly concluded that this impeachment evidence would not have changed the trial's outcome.

The standard for establishing that the Illinois Appellate Court's application of *Strickland* was unreasonable is considerably high. *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019). So long as the Illinois Appellate Court took the constitutional standard seriously and produced an answer within the range of defensible positions, its decision is reasonable for habeas purposes. *Id.* Here, the appellate court correctly relied upon *Strickland* when it concluded that Carlisle did not establish prejudice for any error involving impeachment evidence based on the overwhelming evidence of Carlisle's guilt presented at trial. Specifically, the appellate court reasonably concluded that Carlisle did not establish that the result of his trial would have been different had trial counsel impeached the officers about the small inconsistencies in their testimony.

Turning to appellate counsel, Carlisle did not procedurally defaulted his claim that appellate counsel's failure to raise the argument that trial counsel was ineffective for not objecting to photographs of Officer Vicari's bloody vest and radio being published to the jury. In analyzing ineffective assistance of appellate counsel arguments, the Court applies the familiar two-prong test set forth in *Strickland*. *See Kimbrough v. Neal*, 941 F.3d 879, 881 (7th Cir. 2019). Under the *Strickland*

performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is plainly stronger than the claims counsel did raise on appeal. *Davila v. Davis*, \_\_\_ U.S. \_\_\_, 137 S.Ct. 2058, 2067, 198 L.Ed. 2d 603 (2017). To establish the *Strickland* prejudice prong, Carlisle must show there is a reasonable probability that the issue appellate counsel did not raise would have made a difference in the outcome of his appeal. *See Strickland*, 466 U.S. at 694; *Ramirez v. Tegels*, 963 F.3d 604, 613 (7th Cir. 2020).

The Illinois Appellate Court considered whether trial counsel provided constitutionally defective assistance because if an ineffective assistance of trial counsel claim is without merit, any related ineffective assistance of appellate counsel claim is also without merit. *See Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010) ("the two claims rise and fall together"); *see also Davila,* 137 S.Ct. at 2067 ("Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed."). In considering Carlisle's claim, the Illinois Appellate Court applied *Strickland* and concluded that "[t]he overwhelming evidence of defendant's guilt in this case precludes defendant from being capable of showing that there was a reasonable probability that the outcome of the case would have been different if the photographs had not been published in the jury room." *People v. Carlisle*, 147 N.E.3d 207, 224, 438 Ill.Dec. 938, 955, 2019 IL App (1st) 162259, ¶ 81 (1st Dist. 2019).

Again, Carlisle has failed to establish that the Illinois Appellate Court's application of *Strickland* was objectively unreasonable. The appellate court applied the correct legal standard concluding that Carlisle was not prejudiced by the publication of the photographs to the jury relying on the overwhelming evidence supporting Carlisle's conviction. This decision does not lie well beyond permissible differences of opinions. Accordingly, Carlisle's ineffective assistance of appellate counsel argument is without merit.

**Certificate of Appealability**

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). Instead, a petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Id.* at 336. Under this standard, Carlisle must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation and quotation marks omitted).

Here, reasonable jurists would not debate that Carlisle failed to meet the high threshold of establishing that the Illinois Appellate Court unreasonably applied *Strickland* based on the abundant evidence underlying his conviction. Next, jurists of reason would not find it debatable that Carlisle's compulsory process claim is without merit. The Court therefore declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Conclusion**

For these reasons, the Court denies petitioner's petition for a writ of habeas corpus [1] and declines to certify any issues for appeal. 28 U.S.C. §§ 2253(c)(2), 2254(d)(1). Civil case terminated.

**IT IS SO ORDERED.**

**DATE:** 12/14/2020

Entered _____
**SHARON JOHNSON COLEMAN**
**United States District Court Judge**